IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY PRINCE-SERVANCE,            )
                                 )
        Plaintiff,                )
                                 )
   v.                             )   No. 07 C 1259
                                 )
BANKUNITED, FSB, et al.,          )
                                 )
        Defendants.               )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant BankUnited, FSB's (BankUnited) motion for summary judgment on Count III. For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Mary Prince (Prince) alleges that in 2005 she began to contemplate her plans for retirement from the Chicago Public Schools as an administrator. She claims to have heard a radio commercial at that time advertising mortgage service for the use in purchasing homes. She allegedly called the phone number from the advertisement and spoke to Defendant Gavin Beal (Beal), a loan officer for

1

Defendant The Mortgage Exchange (TME), about buying a new home. Prince contends that she frequently contacted Beal and that he attempted to gain her confidence and ultimately convinced her he was a trustworthy person. Prince also contends that Beal knew that Prince qualified for the best mortgage rates available on the mortgage market.

Prince asserts that she came across a new home offered for $465,000, but she did not think she could afford such a house. According to Prince, Beal convinced her she could purchase the home and have a mortgage payment of $1,500 per month. When Prince asked how such a low payment was possible, Beal allegedly told her to trust him and he would work it out. Prince entered into a contract to purchase the home. Just prior to closing, Prince allegedly received documents from Beal's employer, TME, indicating that her monthly mortgage payments would be between $1,900 and $4,400 per month. Beal allegedly told Prince to ignore the documents and that they were sent in error. Prince claims that she told Beal she needed to get an attorney, and Beal told her he was an attorney and he would protect her.

TME and Beal allegedly arranged a loan for Prince that was funded by BankUnited (Loan). Prince contends that the Loan was a 40-year loan requiring monthly adjustments to Prince's interest rate. Prince also contends that the loan allowed the interest rate under the Loan to increase by more than 400 percent. The

principal on the loan is allegedly expected to increase from $485,150 to $546,984.39 over the first seven years of the loan. Prince contends that BankUnited is a subprime lender that engages with the other Defendants in certain unscrupulous lending practices involving fees and matters such as yield spread premiums.

Prince claims that in January 2007, she discovered that she was the victim of fraud by the mortgage broker. She contends that she found that her credit report included an additional $10,000 on the principal amount she owed on the loan. She then allegedly found a third party to look over the loan documents for her and help her understand them. Prince and the third party allegedly discovered that the loan application claimed that she was making $12,000 per month at a job when, in fact, she was retired on a fixed income and getting $4,200 per month in benefits. Prince also claims to have discovered that Beal is not a licensed attorney and was not looking out for her best interests. Prince contends that she now has a mortgage that may soon require triple her monthly income and she will have to spend her life savings to avoid going into bankruptcy. Prince brought this predatory lending suit against Defendants.

Prince includes in her complaint: fraud claims brought against TME and Beal (Count I), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., claims brought against all Defendants (Count II), a claim alleging

3

violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, anti-kickback provisions brought against all Defendants (Count III), breach of fiduciary duty claims brought against TME and Beal (Count IV), and an inducement to breach of fiduciary duty claim brought against BankUnited (Count V). The prior judge in this case previously denied TME's and Beal's motion to dismiss. The judge also granted BankUnited's motion to dismiss the claims brought against it in Counts II and V. The instant motion brought by BankUnited is brought solely in regard to the RESPA claim brought against BankUnited in Count III, which is the only remaining claim against BankUnited.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied

by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

BankUnited contends that it is entitled to summary judgment on the RESPA claim (Count III), arguing that Prince cannot show that BankUnited received a

kickback or unearned fee in violation of RESPA. RESPA's anti-kickback provisions provide the following:

> a) Business referrals
>
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a) and (b). RESPA's anti-kickback provisions, however, do not prohibit among other things, "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed. . . ." 12 U.S.C. § 2607(c). In 1999, the U.S. Department of Housing and Urban Development (HUD) put together a two prong analysis "to determine whether a payment (typically a YSP) from a lender to a mortgage broker is legitimate under RESPA or whether it is a forbidden referral fee: (1) whether goods or facilities were actually furnished or services were actually performed for the compensation paid and (2) whether the payments are reasonably related to the value of goods or facilities that were actually furnished or services that were actually performed." *Watson v. CBSK Financial Group, Inc.*, 2002 WL 598521, at *4 (N.D. Ill. 2002)(internal quotations omitted); *see also Chow v. Aegis*

*Mortg. Corp.*, 286 F. Supp. 2d 956, 960-61 (N.D. Ill. 2003)(explaining 2-part HUD test). For a RESPA anti-kickback claim, "the compensation paid must be commensurate with the amount normally charged for similar services, goods or facilities." *Watson*, 2002 WL 598521, at *4 (internal quotations omitted). The application of the HUD test "requires a very detailed factual analysis of the individual transaction," and "[t]he basic principle to be gleaned from all this is that lenders can pay brokers reasonable compensation for the services the brokers perform, but the lender cannot pay a broker a referral fee for sending business the lender's way." *Id.* (indicating that HUD and the courts have determined that yield spread premiums "are not per se illegal"); *see also Krzalic v. Republic Title Co.*, 314 F.3d 875, 878 (7th Cir. 2002)(noting that some other circuits have "concluded, albeit without discussion of [*Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990)] that at least some HUD interpretations of RESPA are within the scope of *Chevron*"). In view of the above, the parties agree that the pertinent issues for the RESPA claim in this case are: (1) whether TME provided compensable services in connection with the Loan, and (2) whether the total compensation paid to TME was reasonably related to the value of such services. (SJ Mem. 5, 7); (Ans. 4, 8, 10).

I.  Darmanin Affidavit

Prince first argues that an affidavit offered by BankUnited in support of its motion for summary judgment should be deemed inadmissible.  BankUnited offered an affidavit of Eric Darmanin, a Senior Vice President for BankUnited (Darmanin Affidavit).  Prince argues that Darmanin lacks personal knowledge of the facts in this case and has not provided a sufficient basis to provide opinion testimony.  Darmanin indicates in his affidavit that he has 25 years of experience as a mortgage professional with BankUnited and refers to his experiences with loans at BankUnited and the circumstances of the instant Loan offered by BankUnited.  (Dar. Aff.)  *See, e.g. Lee v. N.F. Investments, Inc.*, 2000 WL 33949850, at *2 (E.D. Mo. 2000)(granting summary judgment for the defendant based on an officer's affidavit).  BankUnited has shown that Darmanin could offer testimony concerning BankUnited's activities in regard to the Loan, its activities in the marketplace in the past, and offer more than an independent conclusion on the ultimate issue in this case.  *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007)(stating that "[a]n expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless")(internal quotations omitted).  Darmanin could offer factual information aside from any opinion testimony based on independent specialized knowledge.  *See* Fed. R. Evid. 701, 702; *Fujitsu Ltd. v. Netgear, Inc.*,

2009 WL 2341810, at *4 (W.D. Wis. 2009)(explaining distinctions between lay and expert testimony); *Four Winds, LLC v. American Exp. Tax and Consulting Services, Inc.*, 2006 WL 2699747, 7 (N.D. Ind. 2006)(indicating that most courts allow an owner or officer of a business to offer certain lay opinions and "[t]his type of opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business")(internal quotations omitted). BankUnited does not indicate that Darmanin would offer expert testimony, but has provided sufficient facts to indicate that Darmanin's statements could represent potential testimony at trial. Prince also argues that Darmanin's opinions were not disclosed properly during discovery, but Prince has not shown that there was any material misconduct by BankUnited that would warrant striking the Darmanin Affidavit. Prince has also failed to even offer an argument that she was prejudiced by any omission in discovery. Thus, Prince has not shown that the Darmanin Affidavit should be stricken. *See, e.g., Chow*, 286 F. Supp. 2d at 961 (ruling for defendant on summary judgment motion based on "an affidavit of the Branch Operations Manager of the branch that underwrote [the plaintiff's] loan for the proposition that the compensation paid . . . was reasonably related to the services provided").

II. Whether TME Provided Compensable Services

Prince argues that TME did not provide any compensable services in connection with the Loan. Prince contends that TME's actions were "intentionally misleading and fraudulent in nature." (Ans. 5). Prince argues that "TME's actions were not to actually analyze Plaintiff's income or collecting credit and financial information." (Ans. 5). However, even if we were to accept Prince's allegations of deception and fraud, Prince has not pointed to evidence that would reasonably discount all of the services provided by TME. While Prince's allegations would diminish the amounts earned by TME, TME still unquestionably provided some compensable services. *See, e.g.,* 64 Fed. Reg. at 10085 (listing compensable services); 66 Fed. Reg. at 53053 (same). Prince does not contest that Beal identified BankUnited as a possible lender for Prince's home purchase. (R SF Par. 7). Prince acknowledges that she had regular contact with Beal in regard to the Loan. (R SF Par. 8). Prince also acknowledges that Beal collected financial information from her pursuant to the Loan application process and completed the Loan application for Prince, although Prince contends that Beal falsified some of the information. (R SF Par. 9, 11). Prince also acknowledges that Beal was present at the closing and participated in the closing, although Prince contends that Beal represented he was offering services as both a broker and an attorney. (R SF Par. 14). Thus, the

10

undisputed facts reflect that TME offered at least some compensable services in connection with the Loan. *See, e.g.*, *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1273 (11th Cir. 2007)(noting that, despite the alleged improprieties by the mortgage brokers, the "mortgage brokers provided [the plaintiffs] with the kinds of services listed in HUD's 1999 SOP, including, among others, taking down their information and filling out their mortgage applications; analyzing their income and debt and pre-qualifying them to determine the maximum mortgages that they could afford; collecting their financial information; and participating in their loan closings"); *Chow*, 286 F. Supp. 2d at 961 (noting that it was "undisputed that [the broker] provided at least some services to" the plaintiff and lender).

III.  Reasonableness of Compensation

BankUnited argues that the compensation paid to TME was sufficiently close to the services provided to be a reasonable compensation under the marketplace standards. BankUnited contends that TME's total compensation falls within the prevailing range of fees for mortgage brokers that work on transactions of this type. In support, BankUnited provides the Darmanin Affidavit and points to case law finding certain percentages of compensation to be reasonable. (SJ Mem. 7-8); (Reply 5). Prince, in response, fails to point to sufficient evidence to show what an

11

appropriate fee would have been for TME. Thus, even accepting Prince's allegations of fraud and deception, Prince cannot offer a reasonable estimation of what the fee should be for TME. In support of a reasonable fee, Prince offers nothing other than a brochure from the Illinois Attorney General's officer providing general guidance to borrowers for loans. (P. Ex. 4). The brochure does not purport to offer any opinions in relation to the Loan and circumstances in the instant action or even to a similar situation. The brochure indicates that it is intended to merely offer "[t]ips and resources for consumers." (P. Ex. 4). Prince offers no affidavits, experts, or other sources to estimate a reasonable fee for TME. Nor does Prince offer evidence to dispute the information presented in the Darmanin Affidavit offered by BankUnited or supporting case law. *See, e.g., Culpepper*, 491 F.3d at 1274 (noting that "[t]he Borrowers d[id] not present any evidence demonstrating that these compensation amounts were unreasonable in light of the total array of services performed"). The Seventh Circuit has repeatedly stated that "a motion for summary judgment requires the responding party to come forward with the evidence that it has-it is the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 766-67 (7th Cir. 2009)(internal quotations omitted). Affidavits presented by one side, even ones that are offered by declarants with an interest in the proceedings are evidence. *Dominguez v. Alliance Mortg. Co.*, 226 F. Supp. 2d 907, 914 (N.D. Ill. 2002)(stating

12

that "[s]elf-serving affidavits, when unrebutted, can support summary judgment" and granting summary judgment for defendant lender based on affidavit and failure by plaintiff to rebut). We also note that even in the absence of the Darmanin Affidavit, Prince has not pointed to sufficient evidence to proceed to trial on the RESPA claim. Prince must point to evidence that would allow a trier of fact to assess the proper fee for TME and has not done so. The trier of fact must be able to make a reasoned and informed decision, and a brochure with tips given out to the general public does not suffice for the circumstances in this case. *See, e.g., Dominguez*, 226 F. Supp. 2d at 914 (finding that for RESPA claim "generic articles about mortgage broker compensation that allude to 1-2% as a typical range" were not sufficient to defeat the defendant's motion for summary judgment). Prince cannot proceed to trial and ask the trier of fact to merely speculate. *See, e.g., Chow*, 286 F. Supp. 2d at 961 (indicating that the defendant had provided an affidavit, and the plaintiff "on the other hand, provides no evidentiary support for his contrary assertion that the compensation was not reasonably related to services provided"). Since Prince cannot show what a reasonable fee for TME would be, Prince cannot establish that TME's compensation was excessive. Therefore, we grant BankUnited's motion for summary judgment on the RESPA claim (Count III).

## CONCLUSION

Based on the foregoing analysis, we grant BankUnited's motion for summary judgment on the RESPA claim (Count III).

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 10, 2009